*700 OPINION.
Van Fossan:
The petitioners presented no evidence to support their allegations of error (1) and (2) and their counsel made no reference thereto in his brief. Therefore, we conclude that they have abandoned such issues and we approve the action of the respondent in respect thereto. The petitioners concede that the former saloon situated at Myrtle and Hamburg Avenues was assigned a proper cost of $15,000 and that a profit of $13,000 was realized upon its sale in 1923.
The only issue remaining in controversy is that respecting 72 parcels of improved real estate situated in the New Lot Section of Brooklyn,. New York.
It is unnecessary to recount the circumstances under which Claus Doscher acquired his property. In 1907 he owned 200 lots which he had difficulty in selling as unimproved real estate. Thereupon he entered into an agreement with Edward W. Lauer, a building contractor, in whom he had the utmost confidence, whereby he and Lauer would engage in the project of erecting dwellings and other buildings on all the 200 lots and selling for profit the parcels of real *701 estate thus improved. Doscher was to furnish the land and to advance the money required to finance the operations. Lauer was to have complete charge of constructing the buildings, keep all accounts, make all sales, arrange all details of sale and collect all amounts due from the purchasers. The profits derived from the enterprise were to be divided equally and Lauer was to make a full accounting therefor after all buildings were erected and sold. As a matter of convenience and to relieve him of the unavoidable details incident to conveying title to purchasers, the possible necessity of repossession, etc., Doscher conveyed title to the entire 200 lots to Lauer’s wife. This conveyance was without consideration and no purchase money notes were given. A first mortgage covering the land was given by the Lauers to Doscher.
Pursuant to the agreement, up to July, 1910, 128 houses and other buildings had been constructed and sold. The proceeds and profits therefrom had been used as a revolving fund to aid in the building of the remaining 72 structures. Claus Doscher died in that month. Shortly thereafter the 72 buildings were completed, but Lauer made no move to account for the profits, and, on being approached, at first refused to recognize any liability to Doscher’s estate. In December, 1910, Doscher’s executors were forced to bring suit for specific performance. They were successful in the trial court and obtained a judgment. Lauer appealed. When it was discovered that a judgment against him could not be enforced, the case was compromised in November, 1912, by his agreeing to reconvey the property in controversy to the petitioners upon their releasing all claims against him, including the profits made on the 128 houses but unaccounted for by him. Due to difficulty in securing a reconveyance of one house, the formal conveyance was not made until March 28,1913.
In order to clear the property of all liens and charges against it, including the advances made by Doscher to Lauer and legal expenses and disbursements, the petitioners were compelled to pay $581,914.34 and a certain amount for back taxes. The respondent has assumed that such sum was the actual cost to petitioners of the 72 parcels of improved real estate and has computed the alleged deficiency on that basis. In this we believe him to be in error.
But, assuming the correctness of respondent’s theory, patently the sum of $581,914.34 used by the respondent in his computation in determining profit could not be the true cost. That amount represents merely the sum required to discharge obligations against the property and to settle the matters in controversy between the petitioners and Lauer. It does not include back taxes nor does it take into account the profit due to the Doscher estate from the sale of *702 the 128 buildings previously erected and disposed of by Lauer. No accounting of the cost of construction of the 200 structures or any of them built by Lauer was ever made by him.
From the facts heretofore set forth, however, it is obvious that the transaction by which Mrs. Lauer acquired title to the lots in question was in no sense a sale to her. No consideration for the transfer was paid by either Lauer or his wife. She held the record title solely to facilitate and expedite their real estate operations. Likewise, the formal return of the record title to the petitioners under the compromise settlement with Lauer, whereby they relinquished all claims for profits due to Doscher’s estate and paid a definite sum to clear the encumbrances thereon, except taxes, was not an acquisition of property as contemplated by the statute. The real ownership of the property had never left Claus Doscher or his successors. He contributed to the project the land and funds necessary to conduct the contemplated operations, while Lauer supplied his ability and skill as a builder and contractor, superintended construction, made sales, collected balances due from purchasers and managed the undertaking generally. Though record title was transferred to Lauer’s wife, she became only a nominal owner, the transfer to her being charged with a trust in favor of Doscher, who was the real owner of the property. McGuire v. McGuire, 193 N. Y. S. 772. At most, the entire settlement proceedings, from the institution of the action by the petitioners to formal reconveyance made on March 28, 1913, served only to restore to the petitioners the record title to property of which Claus Doscher, and hence the petitioners as representatives of his estate, had at all times been the real owners. Thus, we may disregard March 28, 1913, the date of the deed from Mrs. Lauer to the petitioners, as forming the basis of calculating the gain or loss resulting from the sale of the property in 1923 and treat the transaction as one in which title existed in petitioners prior to March 1,1913.
Consequent on the above reasoning, we hold that the correct basis of calculating gain or loss on the subsequent sale of the 72 parcels is their fair market value as of March 1, 1913. This we have found to be $750,000. Since the property was sold for $697,500 there is no gain for the years 1923 and 1924.
Reviewed by the Board.

Judgment will l>e entered under Bute 60.